Slip Op. 11-99
UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| KAIRALI DECAN, INC., a California corporation,<br><br>                   Plaintiff,<br><br>      v.<br><br>THE UNITED STATES,<br><br>                   Defendant. | **Before: Gregory W. Carman, Judge**<br><br>Court No. 10 00242 |

[*Court lacks jurisdiction; case will be dismissed absent request for transfer*]

Law Offices of John M. Daley (John M. Daley), for Plaintiff.

Tony West, Assistant Attorney General; Jeanne E. Davidson, Director, and Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (L. Misha Preheim, Aimee Lee); Jonathan D. Stowers, United States Customs and Border Protection, of counsel, for Defendant.

August 10, 2011

OPINION & ORDER

CARMAN, JUDGE: This matter is before the Court on Defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to USCIT Rule 12(b)(1). (Def.'s Mot. to Dismiss ("Def.'s Mot.").) The question for the Court is whether an importer, whose identity is alleged to have been surreptitiously used by another to enter goods that never came into the importer's possession may pay liquidated damages and sue for a refund in this court under 28 U.S.C. § 1581(i)(4). The Court rules that Plaintiff, importer

*Court No. 10-00242* Page 2

Kairali Decan, may not sue under § 1581(i)(4) because Kairali Decan could have brought a suit under 28 U.S.C. § 1581(a) and obtained a remedy not manifestly inadequate, but failed to do so. Absent a request filed by Plaintiff within one week showing why the interest of justice requires transfer of this case to another judicial forum, the case will be dismissed.

**BACKGROUND**

I. **Importation of the Entry**

Plaintiff, a corporation located in Fremont, California, imports and wholesales foreign foods. (Third Amended Complaint for Declaratory and Injunctive Relief and Petition for Writ of Mandate ¶¶ 11, 14 ("Compl.").) On January 17, 2007, a shipment of food from Sri Lanka arrived in San Francisco, with Kairali Decan listed as the importer, and was signed for by "Khan," listed as the "CEO." (Pl.'s Resp. to Def.'s Mot. to Dismiss ("Pl's Resp."), Ex. G ("Entry Summary").) The shipment was given entry number C28 0264041 0. (Id.) On January 24, 2007, the shipment was delivered, per instructions on purported Kairali Decan letterhead signed by "Salman F. Khan, Director," to a warehouse belonging to "SF Food" at 30998 Huntwood Avenue #106, Haywood, California  a premises leased by S.F. Foods (for whom the lease was signed by "Abdul Salman Fariz."). (Id. at Ex. K, Attach. 6 7.)

*Court No. 10-00242*                                                                                                          **Page 3**

**II.    <u>FDA Attempts to Examine the Entry</u>**

On January 23, 2007, the Food & Drug Administration ("FDA") received the entry documents, which contained no contact information. An FDA import specialist looked up Kairali Decan's phone number and spoke to the CEO, Joseph Thomas, on February 1, 2007. (<u>Id.</u> at Ex. S.) The FDA specialist asked Mr. Thomas about entry C28 0264041 0; Mr. Thomas said "Mr. Salman" was handling the entry and gave a phone number. (<u>Id.</u>) The FDA specialist then called the given number and left a message about arranging an inspection of the shipment. (<u>Id.</u>) Mr. Salman left a message for the FDA on February 2, 2007 saying that he was overseas and could arrange inspection when he returned on February 15, 2007. (<u>Id.</u>) On February 5, 2007, the FDA left Mr. Salman a message requesting that he call back with the best time to reach him in person; to tell the FDA who picked up the shipment, and its current location; and to give the name of anyone else who could assist with an FDA inspection in Mr. Salman's absence. (<u>Id.</u>) Mr. Salman did not return this call. (<u>Id.</u>) On February 13, 2007, the FDA, having discovered that Mr. Salman was the subject of a prior case for failure to redeliver imports for FDA inspection, asked CBP to issue a Notice of Redelivery to Kairali Decan to facilitate FDA inspection. (<u>Id.</u>)

III.   **Notice to Redeliver, Notice of FDA Action, Notice of Liquidated Damages**

CBP records show that CBP issued the Notice to Redeliver on February 16, 2007 and mailed it to Kairali Decan's office. (Def.'s Mot., Exs. 4, 7.) It is unclear whether Kairali Decan received the Notice to Redeliver; Kairali Decan contends that the Court has jurisdiction under § 1581(i) to decide whether an importer that is a "**complete stranger**" to an entry and who "may or may not" have received a Notice to Redeliver that entry must file a protest in order to preserve its right to challenge the Notice to Redeliver at the Court of International Trade. (Compl. ¶ 12 at 5 (emphasis in original).) Kairali Decan also states that it has no record of receipt of a Notice to Redeliver and does not recall receiving one, from which it concludes that it never received the Notice. (Id. ¶ 19.) In any case, it is agreed that Kairali Decan did not respond to the Notice to Redeliver. (See id. at ¶¶ 19 20; Def.'s Mot. 5 7.)

Kairali Decan admits, however, that in February 2007 it received a Notice of FDA Action regarding entry "C28 02640041 0" [sic], which listed Sri Lankan products. (Compl. ¶ 18; see also Pl.'s Resp., Ex. A.) Knowing that Abdul Salman Fariz was the only local distributor of Sri Lankan foods, Kairali Decan contacted him regarding the FDA notice. (Id.) Mr. Salman Fariz admitted importing the goods under Kairali Decan's name and assured Kairali Decan that he would take care of the FDA Notice. (Id.) When

an FDA employee later called Kairali Decan about the entry, he was told to call Mr. Salman Fariz, who was the importer of the goods. (Id.)

On April 20, 2007, CBP issued a Notice of Liquidated Damages in the amount of $24,606.00 to Kairali Decan. (Def.'s Mot., Ex. 4.) Kairali Decan claims that it received this Notice of Liquidated Damages only in July 2007, when the surety provided a copy. (Compl. ¶ 20.) Plaintiff filed a petition for relief from liquidated damages, together with evidence that Mr. Salman Fariz was the actual importer at issue, but CBP refused to cancel or mitigate liquidated damages. (Id. ¶¶ 20, 21.) CBP also rejected an offer in compromise proposed by Kairali Decan (id. ¶¶ 23, 24) and a supplemental petition for relief from liquidated damages (id. ¶¶ 32, 33). Kairali Decan then filed suit in the U.S. District Court for the Northern District of California, and, a short time later, paid $24,606.00 to CBP to avoid sanctions for non payment. (Id. ¶¶ 34, 35.)

In February 2009, the parties stipulated that this action be transferred from the Northern District of California to the Court of Federal Claims. (Pl.'s Resp. at 8.) In the Court of Federal Claims, Plaintiff amended its complaint and Defendant moved to dismiss. (Id.) The Court of Federal Claims, noting that it "lacks jurisdiction to hear claims within the exclusive jurisdiction of the Court of International Trade" and that 28 U.S.C. § 1581(i) "grants exclusive jurisdiction to the CIT on any claims against the United States providing for 'administration and enforcement with respect to the matters

*Court No. 10-00242*                                                                                                                            Page 6

referred to in (a) (h) of this section'," found that "the CIT is in the best position to decide which subpart of section 1581 applies to plaintiff's claim." (Def.'s Mot., Ex. 5.) Stating that, pursuant to 28 U.S.C. § 2631,[1] "the possibility exists that plaintiff's claim could be time barred if we dismiss and Kairali is required to re file, the interest of justice dictates transfer of the claim rather than dismissal," the Court of Federal Claims transferred the case to this Court for its jurisdictional determination. (Id.)

### JURISDICTION

The threshold issue here is whether this Court has jurisdiction to hear this case under 28 U.S.C. § 1581(i). Upon examining the record and relevant body of statutory and case law, the Court concludes that it does not.

**I.**     **Discussion**

Kairali Decan asserts that the Court has jurisdiction over this suit pursuant to 28 U.S.C. § 1581(i), which states in relevant part:

> [i]n addition to the jurisdiction conferred upon the Court of International Trade by subsections (a) (h) of this section . . . the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for
> (1) revenue from imports or tonnage;
> (2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;

---

[1] When a "court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer" the action to another court in which the case "could have been brought at the time it was filed." 28 U.S.C. § 1631.

> (3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or
> (4) administration and enforcement with respect to the matters referred to in paragraphs (1) (3) of this subsection and subsections (a) (h) of this section.

Kairali Decan specifies that subsection (i)(4) pertains to this case. (Compl. ¶ 12.)

Jurisdiction under subsection (i) of 28 U.S.C. § 1581 "may not be invoked when jurisdiction under another subsection of § 1581 is or could have been available, unless the remedy provided under that other subsection would be manifestly inadequate." Int'l Custom Prods., 467 F.3d 1324, 1327 (Fed. Cir. 2006) (quoting Norcal/Crosetti Foods, Inc. v. United States, 963 F.2d 356, 359 (Fed. Cir. 1992)).

The Court finds that because Kairali Decan could have pursued a remedy under subsection (a), and because that remedy would not have been manifestly inadequate, Kairali Decan cannot now bring suit under subsection (i) after it failed to seek relief under subsection (a).

### A.   Whether Jurisdiction Was Available Under 28 U.S.C. § 1581(a)

Jurisdiction under subsection (a) would have been available to Kairali Decan had it acted within the allotted time. Let us examine the "road not taken" to see why Kairali Decan's choice of remedy "has made all the difference"[2] in this case.

---

[2] "I shall be telling this with a sigh / Somewhere ages and ages hence: / Two roads diverged in a wood, and I     / I took the one less traveled by, / And that has made

1. <u>Requirements for Bringing Suit Under Subsection (a)</u>

Subsection (a) states that "[t]he Court of International Trade shall have exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930 [19 U.S.C. § 1515]." 28 U.S.C. § 1581(a). Section 1515 governs the manner in which the CBP will administratively adjudicate protests filed under 19 U.S.C. § 1514.

> [D]ecisions of the Customs Service . . . as to [among other things] a demand for redelivery to customs custody . . . shall be final and conclusive upon all persons (including the United States and any officer thereof) <u>unless a protest is filed in accordance with this section, or unless a civil action contesting the denial of a protest . . . is commenced in the Court of International Trade</u>.

28 U.S.C. 1514(a) (emphasis added). Protests may be filed by "the importers or consignees <u>shown on the entry papers</u>" within 180 days after a Demand for Redelivery. <u>Id.</u> at § 1514(c)(2)(A), (c)(3) (emphasis added).³ If a protest is denied, that denial may be challenged in the Court of International Trade "by the person who filed the protest." 28 U.S.C. § 2631(a).⁴

---

all the difference." ROBERT FROST, <u>The Road Not Taken</u>, <u>in</u> MOUNTAIN INTERVAL (1920).

³ Congress amended § 1514(c) to extend the time for filing a protest from ninety to 180 days effective as of December 2004. <u>See</u> note under 19 U.S.C. § 1514.

⁴ Suit may be brought in the Court of International Trade "only if all liquidated duties, charges, or exactions have been paid at the time the action is commenced." 28 U.S.C. 2637(a). Such suit is timely if brought "within one hundred and eighty days after the date of mailing of notice of denial of a protest [or] denial of a protest by operation of law." 28 U.S.C. § 2636(a).

2. Positions of the Parties

Kairali Decan contends that the remedy of filing a protest and bringing a subsection (a) suit was unavailable because it never received the Notice to Redeliver and was therefore unable to protest it. (Pl.'s Resp. 16 19.) Kairali Decan also argues that it could not have filed a protest because it was not the actual importer of the entry; Mr. Salman Fariz, who allegedly stole Kairali Decan's identity, was. (Id. at 19 20.) Finally, Kairali Decan asserts that it could not have filed a protest because identity theft is not one of the grounds for protesting a Notice to Redeliver given in 19 C.F.R. § 174.11, which only permits, in relevant part, protests of the legality of orders excluding merchandise from entry or delivery.[5] (Id. at 20 21.)

The government argues that Kairali Decan should be charged with actual knowledge of the Notice to Redeliver for three reasons: (1) Kairali Decan is legally presumed to have received the properly mailed notice pursuant to case law; (2) even if Kairali Decan did not receive the notice, it has admitted that it had "ample notice of the substance of the notice" in February 2007; and (3) Kairali Decan received the Notice of Liquidated Damages in late April or early May 2007 and then had actual knowledge of the February 2007 Notice to Redeliver within the time for protesting that earlier notice.

---

[5] The regulation provides that protests under 19 U.S.C. § 1514 may include "decisions of the port director, including the legality of all orders and findings entering into the same, [regarding, inter alia,] exclusions of merchandise from entry or delivery under any provision of the Customs laws." 19 C.F.R. § 174.11.

(Def.'s Reply in Support of Mot. to Dismiss ("Def.'s Reply") 3 5.) The government also maintains that Kairali Decan could have protested the Notice to Redeliver because it was the "importer . . . shown on the entry papers" one of the entities that may file a protest listed in 19 U.S.C. § 1514(c)(2) and the implementing regulation at 19 C.F.R. § 174.12. (Id. at 7.) The government insists that Kairali Decan would have been able to raise its identity theft claim in its protest as a defense to the Notice to Redeliver, and could have appealed an adverse decision to the Court of International Trade under 28 U.S.C. § 1581(a). (Id. at 6 7.)

    3.    <u>Analysis</u>

It is beyond question that Kairali Decan was the "importer shown on the entry papers." 19 U.S.C. § 1514(c)(2)(A); <u>See</u> <u>Entry Summary</u>. Kairali Decan was therefore authorized to file a protest under § 1514 challenging the Notice to Redeliver, despite not being the <u>actual</u> importer of the goods at issue. The plain language of the statute is sufficient to make this clear.

Kairali Decan admits that it received the Notice of Liquidated Damages, at the latest, in July 2007, when the surety forwarded a copy. Although Kairali Decan does not specify <u>when</u> in July 2007 it received the Notice of Liquidated Damages, that does not matter; the time for filing a protest 180 days had not expired by July 31, 2007, which was 165 calendar days after the issuance of the Notice to Redeliver. This demonstrates

that Kairali Decan <u>could have</u> filed a protest, since it learned of the Notice to Redeliver at least two weeks before the time to file a protest expired.[6]

The Court determines that, in permitting an attack on the <u>legality</u> of an order from Customs to redeliver goods, the statute and regulations provide an adequate arena in which an importer may raise identity theft as a legal defense. As the government suggests, the protest would, in essence, challenge the basis for the order by demonstrating that the importer was listed on the entry paperwork in error. The Court does not share Kairali Decan's too narrow reading of the grounds permitted for protest under 19 C.F.R. § 174.11.

For these reasons, the Court holds that Kairali Decan could have filed a protest,

---

[6] The record strongly suggests that Kairali Decan knew, or should have known, of the Notice to Redeliver much earlier. For instance, Kairali Decan admits that it received a Notice of FDA Action, which showed that the entry was made in the name of Kairali Decan, in February 2007. (<u>Pl.'s Resp.</u> at 2 3.)  Kairali Decan admits that it contacted Mr. Salman Fariz upon receiving this notice, and that he admitted that he had used Kairali Decan's identity to make the entry and assured Kairali Decan that he would take care of the matter. Thus at some time in or shortly after February 2007, Kairali Decan learned that it was the importer of record for an entry that was actually made by another. The Notice of FDA Action also made Kairali Decan aware of the possibility that redelivery would be requested: it stated, in part, "FDA will not request redelivery for examination or sampling if the products are moved, following USCS conditional release to a location within the local . . . area or to a location approved by the FDA office." (<u>Id.</u>, Ex. A at 3.) This language should have warned Kairali Decan that issuance of a Notice of Redelivery was a real possibility if the importer who stole Kairali Decan's identity did not make good on his promise to "take care of any problem with the matter without further involvement by plaintiff." (<u>Id.</u> at 3.) While not dispositive of the issues in this case, these established facts in the record show Kairali Decan taking an oddly blasé position regarding an entry it claims was falsely made under its name.

and challenged any denial under subsection (a) of 28 U.S.C. § 1581.

### B. Whether § 1581(a) Relief Was Manifestly Inadequate

Because the Court finds that Kairali Decan could have brought a case pursuant to § 1581(a), the only way jurisdiction under § 1581(i) might still be available is if the Court finds that the remedy available under § 1581(a) — the road not taken — would have been manifestly inadequate. <u>See</u> <u>Int'l Custom Prods.</u>, 467 F.3d at 1327. The Court finds that such relief would not have been manifestly inadequate and that § 1581(i) jurisdiction is therefore unavailable.

#### 1. <u>Positions of the Parties</u>

Kairali Decan argues that the filing of a protest is a manifestly inadequate remedy for an importer whose identity was stolen and falsely used to make an entry of goods that the importer never received. Kairali Decan states that "[t]his is because a victim of identity theft, by definition, (1) does not have the goods, and (2) does not have access to <u>any of the information it would need to establish that it was not the actual importer of the goods in issue</u>, including" the entry summary, bill of lading, and Customs bond, "all of which it would need to demonstrate that it was not liable for the importation." (<u>Pl.'s Resp.</u> at 22 (emphasis in original).)

The government counters that CBP Form 19 (<u>see</u> <u>Mot. to Dismiss</u>, Ex. 6) "allows parties to contest such a notice like the one at issue in this case . . . . In that protest,

*Court No. 10-00242* Page 13

Kairali could have raised the claim . . . that it was not Kairali that imported the merchandise and that it had no control over the merchandise." (Def.'s Reply at 6.) The government also contends that Kairali Decan's manifest inadequacy argument "is, in essence, speculating that Customs would not believe Kairali had it presented its claim as a protest." (Id. at 7.) The government notes that if CBP denied the protest, the denial would have been appealable to the Court of International Trade, where the identity theft claim could have been presented. Finally, the government notes that Customs has the authority to "revise or correct the notice to redeliver to reflect a different importer or to repay amounts paid by Kairali as a result of the failure to redeliver merchandise." (Id. at 8.)

    2.    Analysis

Kairali Decan's argument about manifest inadequacy misses the point. A remedy may be manifestly inadequate where the protest is futile because a Customs regulation directly on point makes the outcome of the protest a "preordained ruling" that is a "mere formality in light of" the regulation, which "unmistakably indicate[s] how [CBP] would determine the issue." Int'l Custom Prods., 467 F.3d at 1328 (citing Pac Fung Feather Co. v. United States, 111 F.3d 114, 116 (Fed. Cir. 1997). Lack of access to paperwork needed to demonstrate the merits of its claim does not necessarily render a protest futile or nullify the appeal of a denial of that protest under subsection (a) of

§1581. See Autoalliance Int'l, Inc. v. United States, 29 C.I.T. 1082, 1094, 398 F. Supp. 2d 1326, 1337 (2005) (noting that the plaintiff might have been able to uncover relevant facts "quickly during the discovery allowed in a § 1581(a) proceeding.").

There is nothing inherent in the protest procedure, or the scope of a challenge to the denial of a protest under § 1581(a), that rendered these procedures inadequate for addressing Kairali Decan's difficult position regarding the entry Mr. Salman Fariz made under Kairali Decan's name. The Court finds that, had Kairali Decan protested the Notice to Redeliver, it could have raised in the protest the exact issues it raises in this suit. If those issues did not prevail before CBP, Kairali Decan could have later sought relief in this Court under § 1581(a); its claims would have received a hearing on their merits, and discovery would have been available to permit Kairali Decan to establish the necessary factual basis to demonstrate that its claims had merit.

Because Kairali Decan had an adequate remedy available via § 1581(a), but failed to make use of that remedy, Kairali Decan cannot now invoke jurisdiction under § 1581(i)(4). The Court therefore finds that it does not have jurisdiction over this case under § 1581(i)(4).

*Court No. 10-00242* Page 15

## Conclusion

Upon determining that the Court has no jurisdiction, the next question is what the Court should do with the case. The possibilities are to grant Defendant's motion and dismiss the case, or to transfer the case to another court and deny Defendant's motion.

The Court notes that the Court of Federal Claims transferred the case here pursuant to a provision that requires transfer where the transferring court "finds that there is a want of jurisdiction," among other things. 28 U.S.C. § 1631. The Court of Federal Claims having rejected the possibility that it has jurisdiction, transfer back to that court is not "in the interest of justice." Moreover, no party to this case has shown that the interest of justice requires transfer of the case to any forum other than the Court of Federal Claims, and the Court has not identified any grounds for transfer on its own.

In an excess of caution, however, any party is permitted to file before August 17, 2011 a letter showing that the interest of justice requires transfer of this case to another judicial forum, absent which the case will be dismissed. It is therefore

*Court No. 10-00242*                                                                                           **Page 16**

**ORDERED** that the Clerk of the Court dismiss this case on August 17, 2011 unless a party shows by letter filed with the Court before August 17, 2011 that the interest of justice requires transfer to another forum.

                                                    /s/Gregory W. Carman
                                                    Gregory W. Carman, Judge

Dated:   August 10, 2011
           New York, NY